1   **WO**

2

3

4

5

6                     IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Valinda Jo Elliott,                    )     No. CIV 05-4240-PCT-MHM
                                           )
10                 Plaintiff,              )     **ORDER**
                                           )
11  vs.                                    )
                                           )
12                                         )
    White Mountain Apache Tribal Court;)
13  Honorable John Doe Tribal Judge; and)
    White Mountain Apache Tribe,          )
14                                         )
                   Defendant.              )
15                                         )
                                           )
16  _____)

17         Currently before the Court is Defendants White Mountain Apache Tribal Court;

18  Honorable John Doe Tribal Judge; and White Mountain Apache Tribe's ("Defendants")

19  Second Amended Motion to Dismiss. (Dkt.#6).   After reviewing the pleadings and

20  conducting oral argument on December 4, 2006, the Court issues the following Order.

21  **I.     Background**

22         On December 27, 2005, Plaintiff Valinda Jo Elliott ("Plaintiff") filed the instant

23  Complaint in this Court. (Dkt.#1).  Plaintiff's Complaint seeks declaratory and injunctive

24  relief against Defendants.  Specifically, Plaintiff seeks to enjoin the prosecution of a civil

25  action against Plaintiff in the White Mountain Apache Tribal Court and for a declaratory

26  judgment that the Tribal Court may not exercise jurisdiction over Plaintiff.   (Dkt.#1,

27  Complaint ("Compl.) ¶1).  Plaintiff is named in the Tribal Court complaint for her alleged

28  role in contributing and/or causing a fire that caused substantial damage to the land within

1   the territory and boundary of the White Mountain Apache Tribe reservation in the months

2   of June and July 2002. (Id. ¶9). After being lost in the wilderness for approximately three

3   days, Plaintiff set a signal fire to flag down an overflying helicopter traveling to a nearby fire.

4   (Id.). The signal fire worked and the helicopter picked up Plaintiff and flew her to safety.

5   (Id.). However, the signal fire spread and continued to burn. The signal fire merged into the

6   nearby burning fire and formed the Rodeo-Chediski fire; one of the State of Arizona's largest

7   fires burning over 400,000 acres of land, including land within the White Mountain Apache

8   Tribal reservation. On June 11, 2003, the White Mountain Apache Tribe instituted a civil

9   action in White Mountain Apache Tribal Court against Plaintiff. The current tribal complaint

10  asserts claims against Plaintiff, a non-Indian and non-member of the White Mountain Apache

11  Tribe, seeking civil penalties including restitution for violations of the White Mountain

12  Apache Tribe government and game and fish codes as well as acts of negligence and

13  trespass. (Defendants' Second Amended Motion to Dismiss, Exhibit A).

14        Plaintiff challenged the jurisdiction of the White Mountain Apache Tribal Court

15  during the course of litigation in that court. (Compl. ¶12). Specifically, Plaintiff filed a

16  motion to dismiss for lack of jurisdiction citing the Supreme Court's ruling in Montana v.

17  United States, 450 U.S. 544 (1981). Plaintiff's motion was denied at the Tribal trial court

18  level on December 18, 2003 and the White Mountain Apache Court of Appeals dismissed

19  Plaintiff's appeal on April 12, 2005, finding that it did not possess the requisite jurisdiction

20  to hear the appeal because a final order had not yet been issued in the case. (Defendants'

21  Second Amended Motion to Dismiss, Exhibits B and C). Plaintiff asserted the instant action

22  on December 27, 2005 and on March 20, 2006, Defendants filed their instant Second

23  Amended Motion to Dismiss citing Rules 12(b)(2), 12(b)(4), 12(b)(5) and 12(b)(6) as basis

24  for dismissal. Plaintiff has opposed the Motion and it is fully briefed and ripe for the Court's

25  consideration.[1]

26

27

28        [1]Defendants' basis for dismissal pursuant to Rule 12(b)2), 12(b)(4) and 12(b)(5) is
    moot as the Parties agree that the issue with service of process has been resolved.

1   **II.     Analysis**

2           Defendants move to dismiss Plaintiff's complaint on several grounds invoking Rule

3   12(b)(6) including (1) Plaintiff did not properly exhaust the requisite tribal remedies prior

4   to bringing the instant action; and (2) the Tribal Court clearly has jurisdiction pursuant to the

5   Supreme Court's ruling in Montana v. United States, 450 U.S. 544 (1981).

6           **A.      Exhaustion of Tribal Remedies**

7           Defendants contend that dismissal, or at the very least a stay, of Plaintiff's Complaint

8   is proper because Plaintiff has not exhausted tribal remedies prior to bringing suit in this

9   Court.  This position is in direct contravention to the allegation of Plaintiff's Complaint

10  which states "Plaintiff has exhausted her Tribal remedies and Tribal jurisdiction clearly does

11  not lie under Montana v. U.S.  Therefore, any further proceedings in Tribal Court are

12  contrary to law." (Compl. ¶15).  Support for Defendants' position derives from the Supreme

13  Court's ruling in National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 854-57,

14  (1985) which held that "a district court should order a stay, or dismiss the action,

15  notwithstanding the fact it has subject matter jurisdiction over a civil action against a non-

16  Indian, to permit a tribal court to determine in the first instance whether it has the power to

17  exercise subject matter jurisdiction in a civil dispute between Indians and non-Indians that

18  arises on an Indian reservation." Stock West Corp. v. Taylor, 964 F.2d 912 (9th Cir. 1992)(en

19  banc).  The Supreme Court justified such action in district courts because "an orderly

20  administration of justice in federal court will be served by allowing a full record to be

21  developed in the Tribal Court before either the merits or any question concerning appropriate

22  relief is addressed." National Farmers, 471 U.S. at 856.  Moreover, Defendants point out that

23  according to the Supreme Court "exhaustion of tribal remedies requires that tribal appellate

24  courts be given the opportunity to review determinations of the lower tribal courts." Iowa

25  Mutual Ins. Co. v. LaPlante, 480 U.S. 9, 17 (1987).  Defendants further note that to date, only

26  the White Mountain Apache trial court has made a determination on the merits as to

27  jurisdiction over Plaintiff in the White Mountain Apache Tribal Court. (Defendants' Second

28  Amended Motion to Dismiss, Exhibit B). The White Mountain Apache Court of Appeals

1   dismissed Plaintiff's interlocutory type appeal noting that the White Mountain Apache Rules

2   of Appellate Procedure only give the appellate court jurisdiction to hear "final decisions and

3   orders" from tribal court. (Defendants' Second Amended Motion to Dismiss, Exhibits C).

4   As such, the appellate court did not reach the merits and dismissed for lack of jurisdiction.

5   Defendants, therefore, argue that the exhaustion of tribal remedies has not been met.

6   Conversely, Plaintiff argues that a decision on the merits from the White Mountain Apache

7   Court of Appeals is not required under the holding of Iowa Mutual and that because the tribe

8   has taken the requisite "'first bite' at the apple" in determining jurisdiction that the tribal

9   remedies requirement has been met. (Plaintiff's Response, pp.3-4).

10        The Court finds itself  in agreement with Defendants on this issue.  It is undisputed

11   that the White Mountain Apache Court of Appeals has not entertained the merits of Plaintiff's

12   appeal regarding her motion for lack of jurisdiction before the Tribal Court.  As noted above,

13   the holding in Iowa Mutual is clear in that, at the very least, the Tribal appellate courts must

14   be given the opportunity to entertain the merits of the jurisdiction issue before bringing any

15   claim in federal court.  Here, no such opportunity was presented as the White Mountain

16   Apache Court of Appeals lacked jurisdiction to review Plaintiff's appeal.  In addition, there

17   does not appear to be any type of discretionary type of review that the White Mountain

18   Apache Court of Appeals could have exercised as the Appellate Rules of the White Mountain

19   Apache Tribe apparently do not consider hearing non-final orders, such as Plaintiff's appeal.

20    As such, the appellate court lacked even the opportunity to hear Plaintiff's appeal.  Until this

21   appeal is heard, or at least the Tribal appellate court has the opportunity to hear it, this Court

22   finds that the exhaustion requirement has not been met.

23        While the Court finds that as a general matter, tribal remedies were not exhausted

24   prior to bringing suit in this Court, the inquiry does not stop here.  Plaintiff offers several

25   bases justifying the exercise of jurisdiction in this Court even though exhaustion has not been

26   met.  For instance, Plaintiff contends that exhaustion is not required where, as here, there is

27   no colorable or plausible claim of jurisdiction.  In addition, Plaintiff asserts that the three

28   exceptions to the exhaustion requirement support jurisdiction in this Court.

- 4 -

**(1)    Appropriateness of Tribal Jurisdiction**

As noted by the Ninth Circuit in <u>Allstate Indem. Co. v. Stump</u>, 191 F.3d 1071, 1073 (9th Cir. 1999) the Supreme Court has affirmed the exhaustion requirement prior to bringing federal suit unless "it is plain" that the tribal court lacks jurisdiction over the dispute. (citing <u>Strate v. A-1 Contractors</u>, 520 U.S. 438, 459 (1997)).  Thus, where the tribal court plainly lacks jurisdiction, exhaustion serves no other purpose than delay and is, therefore, unnecessary.  <u>Nevada v. Hicks</u>, 533 U.S. 353, 356 (2001).  In this case, Plaintiff asserts that tribal jurisdiction is clearly lacking, thus excusing any failure to exhaust her tribal remedies prior to bringing suit in this Court.  Defendants, on the other hand, take exception to Plaintiff's position and argue that this case falls firmly within the authorization of tribal jurisdiction discussed in the seminal case on tribal jurisdiction over nonmembers of <u>United States v. Montana</u>,  450 U.S. 544 (1981).

As recognized by the Ninth Circuit, "[a]nalyis of Indian tribal court jurisdiction begins with <u>United States v. Montana</u>." <u>Ford Motor Co. v. Todecheene</u>, 394 F.3d 1170, 1174 (9th Cir. 2005).  In <u>Montana</u>, the Supreme Court "held that an Indian tribe could not regulate hunting and fishing by non-Indians on non-Indian owned fee land within the reservation." <u>Id.</u>  The Supreme Court further explained that there are two sources of tribal jurisdiction against nonmembers; either positive by law, by way of statute or treaty, or through the inherent sovereignty of the tribe.  <u>Montana</u>, 450 U.S. at 564.[2]  The Supreme Court further stated that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe." <u>Id.</u> at 565. However, this general principle, applicable to the instant case as the Plaintiff is a non-member defendant in Tribal Court, is subject to two exceptions.  The first exception is that a tribe may regulate through taxation, licensing, or other means, "the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases or other arrangements." <u>Id.</u>

---

[2]In the instant case, there is no argument that tribal jurisdiction is appropriate based upon statute or treaty, rather Defendants argue that tribal jurisdiction is appropriate based upon inherent sovereignty of the tribe.

1    at 565.  The second exception is that a tribe "may also retain inherent power to exercise civil

2    authority over the conduct of non-Indians on fee lands within its reservation when that

3    conduct threatens or has some direct effect on the political integrity, the economic security,

4    or the health or welfare of the tribe."  Id. at 566.  The Ninth Circuit recently spoke to the

5    Montana exceptions and grant of jurisdiction over nonmembers in tribal courts in Smith v.

6    Salish Kootenai College ("SKC), 434 F.3d 1127 (9th Cir. Jan. 10, 2006) (en banc).  In SKC,

7    the Ninth Circuit noted that courts generally look to two specific facts when considering

8    tribal court jurisdiction over a nonmember.  First, courts look to the party status of the

9    nonmember. Id. at 1131.  In other words, whether the nonmember is a plaintiff or defendant

10   in tribal court.  Second, courts have considered, perhaps to a lesser extent, whether the events

11   giving rise to the cause of action occurred within the reservation.  Id.; (citing Montana, 450

12   U.S. at 1132, (stating "[t]o be sure, Indian tribes retain inherent sovereign power to exercise

13   some forms of civil jurisdiction over non-Indians... even on non-Indian fee lands.")).  The

14   Ninth Circuit further explained that with respect to instances, such as here, where the

15   defendant in Tribal Court is a nonmember, that Ninth Circuit precedent suggests "that

16   whether tribal courts may exercise jurisdiction over a nonmember defendant may turn on

17   how the claims are related to tribal lands." Id. at 1132.  The Ninth Circuit noted several

18   decisions in which tribal jurisdiction over a nonmember defendant based upon events

19   occurring on the reservation was appropriate. Id. (citing McDonald v. Means, 309 F.3d 530

20   (9th Cir. 2002) (cause of action arose out of accident on tribal land; tribal court had

21   jurisdiction); Allstate Indem. 191 F.3d 1971 (cause of action arose out of accident on tribal

22   roads, remanded for exhaustion of tribal determination of jurisdiction); and Stock W. Inc.,

23   v. Confederated Tribes of the Colville Reservation, 873 F.2d 1221 (9th Cir. 1989) (contracts

24   with tribe for activities on reservation; tribal court's determination of jurisdiction entitled to

25   comity)).  The Ninth Circuit further concluded that the Supreme Court has left open the

26   question of tribal-court jurisdiction over nonmember defendants in general. Id. (citing Hicks,

27   533 U.S. at 358 n.2).

28

1    In light of the discussion above, this Court is presented with the question of whether

2    "it is plain" that the Tribal Court lacks jurisdiction over the Plaintiff, a nonmember defendant

3    in White Mountain Apache Tribal Court. See Strate, 520 U.S. at 459.  Defendants argue at

4    length in their Motion that the jurisdiction is proper in Tribal Court based upon the tribe's

5    inherent sovereignty.  Based upon the events at issue before the Tribal Court, Defendants cite

6    the second exception of Montana in support of tribal jurisdiction; specifically that [Plaintiff's]

7    activities on tribal land have clearly impacted the White Mountain Apache Tribe's political

8    integrity, economic security, health and welfare..." (Defendants' Motion, p.15).  In support

9    of the application of the second exception to Montana, the Defendants cite the tribe's interest

10   and ownership of the reservation land that was damaged and is at issue before the Tribal

11   Court.  Specifically, the fire damage and destruction to the White Mountain Apache land

12   took place entirely on the tribe's trust lands and not on land held in fee simple for

13   nonmembers.  Moreover, Defendants cite the tribe's ownership and regulatory authority over

14   this land.  Most notably, the timber that was destroyed. See White Mountain Apache Tribe

15   v. Bracker, 448 U.S. 136, 138 (1980) (stating that "[u]nder federal law, timber on reservation

16   land is owned by the United States for the benefit of the Tribe...).[3]  The Defendants further

17   note that protection of the tribal timber has been further solidified with the Indian

18   Reorganization Act of 1934 ("IRA").  Notably, the purpose of § 6 of the IRA, codified as 25

19   U.S.C. § 466, is "'to assure a proper and permanent management of the Indian Forest' under

20   modern sustained-yield methods so as to 'assure that the Indian forests will be permanently

21   productive and will yield continuous revenues to the tribes.'" United States v. Mitchell, 463

22   U.S. 206, 221 (1983).  In fact, the White Mountain Apache Tribe's constitution provides the

23   tribe with authority "to manage all economic affairs and enterprises of the Tribe including

24   tribal lands, timber, sawmills,..." See WMAT Constitution, Article IV, § 1(i).  Defendants

25   further contend that the inherent sovereignty is buttressed by the tribe's right to exclude

26

27
         [3]The Supreme Court in White Mountain Apache Tribe noted that Fort Apache
28   Reservation occupies over 1.6 million acres including 720,000 acres of commercial forest.

1   nonmembers from its land.  See Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 144 (1982)

2   (stating that "[n]onmembers who lawfully enter tribal lands remain subject to the tribe's

3   power to exclude them," which includes the power to place conditions on entry, on continued

4   presence, or on reservation conduct.).  Thus, in light of the tribe's interest and ownership in

5   the land at issue, Defendants contend that jurisdiction is proper as the tribe possesses inherent

6   sovereignty based upon the power to regulate, manage and protect its forest resources and

7   to enforce its laws.

8           Conversely, Plaintiff maintains that there is no doubt that jurisdiction does not lie

9   before the Tribal Court.  Specifically, Plaintiff argues that neither exception of Montana

10  applies to this case.  Most notably, with respect to the second exception of Montana, Plaintiff

11  argues that Defendants provide no authority suggesting that this exception is appropriate in

12  this case. Rather, Plaintiff contends that Defendants are attempting "to unilaterally expand

13  supreme court case law" (Plaintiff's Response, p.7) and to permit such jurisdiction would be

14  "a leap beyond reason." (Id. p.10).

15          The Court does not agree with Plaintiff that it would be a "leap beyond reason" to

16  provide for Tribal Court jurisdiction over Plaintiff.  Specifically, the Court finds that, at the

17  very least, there is a debatable question or colorable claim as to the application of the second

18  exception of the Montana to this case.  The Ninth Circuit's thorough analysis of Montana and

19  Ninth Circuit authority in Ford Motor Co v. Todecheene, 394 F.3d 1170 (2005) is instructive

20  in this regard.  In Ford Motor, the Ninth Circuit affirmed the district court's finding in a

21  products liability case involving a car accident on tribal land that tribal defendant, Ford

22  Motor, "was not required to exhaust tribal remedies before challenging tribal court

23  jurisdiction in federal court, because jurisdiction was plainly lacking and exhaustion would

24  serve only to delay the proceedings."  Id. at 1173.  With respect to the second Montana

25  exception, the Ninth Circuit held that it provided no basis for tribal jurisdiction.  Id. at 1181-

26  82.  In making this determination; however, the Ninth Circuit addressed the dissent's point

27  that "tribal ownership of the land on which an accident occurs is a 'significant' factor that may

28  'may *sometimes* be dispositive.'"  Id. at 1182 (emphasis original).  The Ninth Circuit noted

- 8 -

1    that "sometimes is not always.  And this case is not one of those times when ownership

2    should be considered a dispositive factor in the <u>Montana</u> analysis."  <u>Id.</u>  More importantly,

3    for this case's purposes, the Ninth Circuit went on to explain that "[t]here is absolutely

4    nothing in the record to support the premise that the status of the land impacted potential

5    liability in this case.  This case does not involve encroachment upon tribal land, damage to

6    tribal land, interference with the use of tribal land, or any other effect upon tribal land that

7    might prove dispositive."  <u>Id.</u>  Finally, in rejecting the dissent's reliance on <u>McDonald</u>, a case

8    in which the Ninth Circuit held tribal jurisdiction to be proper over a nonmember, the Ninth

9    Circuit noted that <u>McDonald</u> involved a ruling where the nonmember defendant's horse had

10   wandered onto the roads of the reservation, thereby impacting the interest of the tribe in

11   keeping its roadways free from obstruction.  No such circumstances existed in <u>Todecheene</u>.

12   <u>Id.</u>

13          Unlike the situation presented in <u>Todecheene</u>, this case does involve, heavily, the

14   tribal land.  The tribal land at issue, containing timber which the White Mountain Apache

15   Tribe clearly have an interest in, is at the heart of this litigation.  Unlike <u>Todecheene</u>, this

16   case does involve "damage to tribal land" and the "interference with the use of the tribal

17   land."  <u>Id.</u>  Specifically, a significant portion of the White Mountain Apache Tribe's

18   reservation was burned and damaged by the Rodeo-Chediski fire which is alleged to be

19   attributable, at least in part, to Plaintiff's actionable conduct. Moreover, the White Mountain

20   Apache Tribe's useage of such acreage has undoubtedly been impacted.  <u>Todecheene</u>,

21   provides distinguishing instructive authority that demonstrates that ownership of the land is

22   significantly relevant to this litigation.  As such, the Court finds that, at the very least, there

23   is a debatable question or colorable claim as to whether jurisdiction lies in the Tribal Court.

24   The second exception of <u>Montana</u> provides tribes with the inherent power to exercise civil

25   authority over nonmembers where the conduct "threatens or has some direct effect on the

26   political integrity, the economic security, or the health or welfare of the tribe."  The conduct

27   at issue occurring on the reservation due to the alleged actions of the Plaintiff potentially

28   threatens the economic security of the tribe based upon the interference of the use of the

1 tribe's land and timber and the overall welfare of the tribe as such resources are material to

2 the tribe's stability. As such, it is debatable that the tribe retains jurisdiction to enforce its

3 regulatory authority over the Plaintiff.  Because Plaintiff did not exhaust her tribal remedies

4 before coming to this Court, the Court need not go any further in regards to a final

5 determination as to whether jurisdiction is proper before the Tribal Court.

6                                   **(2)     Exceptions to Tribal Exhaustion**

7            In addition to challenging tribal jurisdiction on the basis that it is plainly lacking,

8 Plaintiff also argues that the three applicable exceptions to tribal exhaustion apply to this

9 case.  In National Farmers, 471 U.S. 845, 857, n.21 (1985), the Supreme Court noted that

10 exhaustion would not be required  where: (1) the assertion of tribal jurisdiction is motivated

11 by a desire to harass or is conducted in bad faith; (2) where the action is patently violative

12 of express jurisdictional prohibitions; or (3) where exhaustion would be futile because of the

13 lack of an adequate opportunity to challenge the court's jurisdiction.

14           With respect to the first exception, Plaintiff argues tribal jurisdiction is motivated by

15 a desire to harass or is in bad faith.  Plaintiff relies on the situation involving Mr. Leonard

16 Gregg, a member of the White Mountain Apache Tribe and firefighter who intentionally set

17 fires that led to the Rodeo fire that eventually merged with the Chediski fire.  Plaintiff takes

18 issue with the fact that even though Mr. Gregg is an enrolled member of the White Mountain

19 Apache Tribe and intentionally caused the Rodeo fire, he has not been charged civilly or

20 criminally in Tribal Court.  Plaintiff uses Mr. Gregg's case to suggest that Plaintiff is being

21 disparately treated and prosecuted for relief that should, at least in part, be directed at Mr.

22 Gregg.

23           The Court; however, does not find persuasive Plaintiff's reliance on Mr. Gregg's

24 situation.  As noted by the Parties, Mr. Gregg was convicted in this District for crimes

25 resulting from his actions causing the Rodeo fire. CR 02-661-PHX-JAT (Dkt.#77). Notably,

26 Mr. Gregg in addition to his one hundred and twenty (120) month term of imprisonment with

27 the Bureau of Prisons has also been ordered to pay restitution in the amount of $27,882,502.

28 The Court struggles to see how the situation of Mr. Gregg demonstrates or suggests that

1   tribal civil jurisdiction over Plaintiff for actions that resulted in damage to land owned by the

2   White Mountain Apache Tribe is motivated by a desire to harass or is in bad faith. At best,

3   Plaintiff's argument is based upon speculation.

4          As to the second exception, Plaintiff argues that the holding in <u>Montana v. United</u>

5   <u>States</u>, 450 U.S. 544 (1981) and its progeny demonstrates the jurisdiction before the Tribal

6   Court is patently violative of express jurisdictional prohibitions. However, this argument has

7   been addressed above by the Court and in this Court's view, jurisdiction before the Tribal

8   Court is not "patently violative" of jurisdictional prohibitions. Rather, there is a debatable

9   question as to the propriety of jurisdiction over Plaintiff in Tribal Court based upon her

10  actions on the White Mountain Apache Tribe's reservation and resulting damage. Thus, the

11  Court does not find Plaintiff's argument as to the second exhaustion exception persuasive.

12         Lastly, Plaintiff argues that exhaustion would be futile because of the lack of an

13  adequate opportunity to challenge the Tribal Court's jurisdiction. Again, Plaintiff takes issue

14  with the procedural history of her initial challenge before the trial level Tribal Court, which

15  rejected her jurisdictional challenge and the Tribal appellate court's dismissal of Plaintiff's

16  appeal for lack of jurisdiction. Plaintiff argues that it would be inequitable to require her to

17  go through the entire case at the trial level and then along with the other issues re-litigate

18  them to the Tribal Court of Appeals. The Court; however, does not find Plaintiff's argument

19  persuasive as it contrary to the Supreme Court's precedent established in <u>Iowa Mutual</u>, 480

20  U.S. at 17. As noted above, the Supreme Court was clear in stating in pertinent part:

21              [t]he federal policy of promoting tribal self-government encompasses the
                development of the entire tribal court system, including appellate courts. At
22              a minimum, exhaustion of tribal remedies means that tribal appellate courts
                must have the opportunity to review the determinations of the lower tribal
23              courts.
    <u>Id.</u>
24
           In <u>Iowa Mutual</u>, the Supreme Court noted that while the tribal court had made an
25
    initial determination as to jurisdiction, the insurer defendant in tribal court, had not yet
26
    obtained appellate review as provided in the Blackfeet tribal code. Thus, the Supreme Court
27
    stated "[u]ntil appellate review is complete, the Blackfeet Tribal Courts have not had a full
28

1   opportunity to evaluate the claim and federal courts should not intervene." Id.   The Court

2   finds this language to be clear and provides against Plaintiff's argument.  Due to the Rules

3   of Appellate Procedure for the White Mountain Apache Code, it does not appear that the

4   White Mountain Apache Court of Appeals has even had the opportunity to entertain

5   Plaintiff's appeal as it only has jurisdiction over "final decisions and orders." See Rule 2A,

6   White Mountain Apache Rules of Appellate Procedure; (Defendants' Motion, Exhibit C).

7   Moreover, as noted above, there are compelling reasons for the federal courts to allow the

8   tribal court systems the first opportunity to address such issues, including the "orderly

9   administration of justice in federal court..."  National Farmers, 471 U.S. at 855-57.  In

10  addition, by allowing the tribal courts a full opportunity to determine jurisdiction it provides

11  the tribal courts with the ability "to rectify any errors it may have made." Id. at 856-57.  As

12  such, while it is clear that Plaintiff takes exception with the trial Tribal Court's ruling with

13  respect to jurisdiction over Plaintiff; this determination needs to be taken to the Tribal

14  appellate court in accordance with the Tribal appellate rules so that the appellate court can

15  have an opportunity to address the jurisdictional issue.  Until that time, Plaintiff's action in

16  this Court is premature.

17          In sum, the Court finds that Plaintiff has failed to exhaust her tribal remedies prior to

18  bringing the instant suit.  In addition, there is a debatable question or colorable claim as to

19  the propriety of jurisdiction over Plaintiff in Tribal Court exemplifying Plaintiff's obligation

20  to exhaust tribal remedies prior to bringing the instant suit.  In addition, the Court does not

21  find any applicable exception justifying Plaintiff's failure to exhaust.

22          **B.      Future Handling**

23          The final determination this Court must make is whether to dismiss Plaintiff's suit

24  before this Court or to stay the present matter pending a determination from the Tribal Court.

25  See SAC, 434 F.3d at 1131, n.1 (stating "[o]rdinarily, so long as there is a 'colorable question'

26  whether a tribal court has subject matter jurisdiction, federal courts will stay or dismiss an

27  action in federal court 'to permit a tribal court to determine in the first instance whether it has

28  the power to exercise subject-matter jurisdiction in a civil dispute between Indians and non-

1  Indians that arises on an Indian reservation.'") (citations omitted).[4]   For instance, in <u>Stock</u>

2  <u>West</u>, 964 F.2d at 920, the Ninth Circuit affirmed the district court's decision to dismiss the

3  lawsuit filed by a nonmember corporation as a matter of comity where the tribal court had

4  not yet resolved the questions of tribal sovereignty.[5]   Additionally, the Supreme Court has

5  held that whether the matter should be dismissed or stayed is a question reserved for the

6  district court's discretion.  <u>See</u> <u>Nat'l Farmers</u>, 471 U.S. at 857.  In this Court's view, and in

7  the interests of comity, dismissal of the Plaintiff's suit is appropriate.  Plaintiff has identified

8  no prejudice resulting from such determination and can properly challenge jurisdiction once

9  the matter is ripe for federal district court consideration.

10      **Accordingly,**

11      **IT IS HEREBY ORDERED** granting Defendants' Second Amended Motion to

12  Dismiss. (Dkt.#6). Plaintiff's action is dismissed without prejudice.

13      **IT IS FURTHER ORDERED** that the Clerk enter judgment accordingly.

14      DATED this 6th day of December, 2006.

15

16

17  _____

18  Mary H. Murguia
United States District Judge

19

20

21

22

23

24

25      [4]Notably, in <u>SAC</u>, the Ninth Circuit made clear that the district court did not issue its
decision that tribal court had jurisdiction until the plaintiff nonmember had exhausted his

26  appeals in tribal court. <u>Id.</u> at 1131, n.1.

27      [5]The Ninth Circuit subsequently held that the district should have stayed the action

28  based upon the alternative ground for dismissal of sovereign immunity. <u>Id.</u>

- 13 -